IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KELLY M. BASSETT, individually and as heir and Personal Representative of the Estate of James M. Bassett, on behalf of herself and all other similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>CREDIT MANAGEMENT SERVICES, INC., and JASON MORLEDGE,<br><br>Defendants. | 8:17CV69<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the plaintiff's motion for partial summary judgment on liability, Filing No. 71 and on the defendants' motion for summary judgment, Filing No. 74.[1] This is a putative class action for violations of the Fair Debt Collection Practices Act, (hereinafter referred to as the "FDCPA") 15 U.S.C. § 1692 *et seq.,* and the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601 *et seq.* (hereinafter referred to as the "NCPA").

The plaintiff challenges defendant CMS's routine practice of filing collection complaints in Nebraska County Courts that seek prejudgment interest and attorney fees under Neb. Rev. Stat. § 25-1801, *et seq.* Bassett contends that CMS misrepresents the nature of the debt as one for "goods or services" rendered, within the purview of Neb. Rev. Stat. § 25-1801, rather than as an action on an "account," and also improperly seeks attorney fees for in-house counsel, and then retains the fees and interest as an

---

[1] Also pending is the defendants' motion for oral argument, Filing No. 81. The plaintiff opposes the motion. Filing No. 83. The court finds the issues herein are straightforward and oral argument is not necessary. Accordingly, the motion will be denied.

undisclosed collection fee. She asserts that defendant CMS's standard collection complaint falsely states the requirements of Nebraska County Court, misleads an unsophisticated consumer in violation of 15 U.S.C. § 1692e and is unconscionable in violation of 15 U.S.C. § 1692f.

**I.    BACKGROUND**

The facts are set out in this court's order on the defendants' motion to certify questions to the Nebraska Supreme Court and for partial judgment on the pleadings and need not be repeated here.  Briefly, the plaintiff alleges that the defendants' violated the FDCPA and NCPA in their standard complaints by characterizing their cause of action as one for providing goods and/or services in order to claim prejudgment interest and attorney fees under Neb. Rev. Stat. § 25-1801, rather than as a cause of action on an account, which does not allow for the collection of prejudgment interest or attorney fees.  She contends the defendants choose to ignore the fact that when these "accounts" are assigned to a collection agency, the claim is no longer based on goods or services provided, but is an ordinary account in default.

The plaintiff seeks summary judgment on the issue of liability—she seeks a determination that the defendants' collection complaints are false and misleading as a matter of law.[2]  The dispositive question is whether the standard form complaint at issue contains false or misleading representations and whether collection of additional sums for prejudgment interest and attorney fees in a state court action is permitted by law.

---

[2] The Eighth Circuit encourages ruling on summary judgment motions before addressing class certification.  *See, e.g.*, *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 573 (8th Cir. 2015) ("A prompt grant of defendants' summary judgment motion would have resolved this portion of the named plaintiffs' claims, no doubt obviating the need for class certification.")

2

She relies on this court's decision in *Powers v. Credit Mgmt. Servs., Inc.*, No. 8:11-CV-436, 2016 WL 612251 (D. Neb. Feb. 2, 2012), an action against defendant CMS, for the proposition that misrepresenting the nature of a debtor's account as a debt for materials or services rendered, rather than an action on an account, in order to deceive state courts and debtors and collect impermissible fees and prejudgment interest is a violation of the FDCPA. *Id.*, 2016 WL 612251, at *10 (citing *Jenkins v. Gen. Collection Co.*, 538 F.Supp.2d 1165, 1174 (D. Neb. 2008)). The defendant CMS was party to the *Powers* litigation and did not appeal the court's finding.[3]

In *Powers*, the court examined a collection complaint identical in most respects to the collection complaint at issue in this action[4] and found

> The collection complaint indicates only that the defendant "is indebted to Plaintiff [CMS] for the following assigned account(s)," followed by the name of a doctor, that "a demand for payment was made" on a certain date, and that "[m]ore than 90 days have elapsed since the presentation of this claim." . . . . The court finds the least sophisticated consumer would be reasonably confused by the interchangeable use of the terms "demand for payment" and "claim" in connection with the "presentment," as well as by the cursory reference to "assigned account(s)," without any mention of the nature of the goods or services provided or the dates on which they were provided. Without any special knowledge of the law, a layperson could not figure out, on the face of the collection complaint, what the claim was for or to whom he or she was indebted, much less comprehend his or her alleged liability for prejudgment interest, costs, or attorney's fees.

---

[3] The action was ultimately settled and CMS agreed that "going forward it [would] no longer use complaints in the same precise form of exhibits A and C to the Amended Complaint." *Powers*, No. 11-CV-436, Filing No. 207-1, Settlement Agreement at 9; 2016 WL 6993743, at *4 (D. Neb. Nov. 29, 2016) (order approving settlement agreement). Whatever the continuing validity of this court's *Powers* decision over other parties and actions, it remains binding on these defendants.

[4] The only difference relevant to the present action is the addition of the sentence "[p]rejudgment interest and attorney fees may not be recovered by Plaintiff without first securing a judgment against the Defendants," following its request for interest and attorney fees. *Compare Powers*, No. 11-CV436, Ex. C, Filing No. 17-3 with Filing No. 1-1, Ex. A herein; *see also* Filing No. 28, Memorandum and Order at 3 n.4. That change does nothing to cure the deficiency noted in *Powers* that the complaints at issue therein were misleading because they misrepresented the nature of the cause of action.

Powers, 2016 WL 612251 at *14. (Emphasis added). Further, this court stated in Powers that "[m]isrepresenting the nature of a debtor's debts as debts for materials or services rendered, rather than actions on accounts, in order to deceive state courts and debtors and collect impermissible fees and prejudgment interest is a violation of the FDCPA." *Id.* (also stating that "[t]he plaintiffs have shown they are entitled to judgment as a matter of law on the issue of liability for FDCPA and NCPA violations in connection with allegations of entitlement to attorney's fees and prejudgment interest in CMS's standard-form complaints.")

Defendants oppose the plaintiff's motion and move for summary judgment in their favor. They contend the Nebraska Legislature enacted a clarifying amendment to Neb. Rev. Stat. § 25-1801 in February of 2018 that undermines the plaintiff's theories in this action. They argue the amended statute is retroactive, is applicable to this case and dispositive of the issues. They question the plaintiff's reliance on "the prior nonbinding (and distinguishable decision in *Powers*." Based on recent Eighth Circuit and District Court caselaw[5] and the amendments to Neb. Rev. Stat. § 25-1801, they argue that the plaintiff's FDCPA/NCPA claims fail as a matter of law and seek a summary judgment of dismissal of this action.

## II. FACTS

---

[5]The defendants rely on *Hill v. Accounts Receivables Services, LLC*, 888 F.3d 343, 346-47 (8th Cir. 2018) (finding a false or misleading statement must be material to be actionable under the FDCPA); *Robinson v. Accelerated Receivables Sols. (A.R.S.), Inc.*, No. 8:17CV56, 2018 WL 1954249, at *1 n.2 (D. Neb. Apr. 19, 2018) (dismissing FDCPA claims as a matter of law); and *Larsen v. Nat. Account Sys. of Omaha, LLC*, No. 8:17-cv-356, Filing No. 32 (D. Neb. May 2, 2018) (granting defendant debt collector's motion to dismiss). The Eighth Circuit's decision in *Hill* post-dates this court's holding in *Powers* and was decided after the conduct challenged in this action. The decision has no application to the claims against these defendants, who were bound by the *Powers* decision at the time of the events that are the subject of this lawsuit.

The record shows Mrs. Bassett is a "consumer" as that term is contemplated in § 1692a(3) of the FDCPA. Credit Management Services, Inc., (hereafter "CMS") is a collection agency located in Grand Island, Nebraska. CMS is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6). Defendant Jason Morledge is president of CMS. Defendant Jason Morledge operates and manages the day-to-day business of CMS.

On or about April 8, 2016, CMS sued James M. Bassett (now deceased) and plaintiff Kelly M. Bassett in the County Court of Dodge County, Nebraska for alleged medical debts. *See Credit Management Services, Inc. v. James Bassett & Kelly Bassett*, Case No. CI 16-534. At the time CMS sued the Bassetts, its policy and practice was to file collection lawsuits in Nebraska County Courts and to serve alleged debtors with county court collection complaints in the form of Exhibit A attached to the plaintiff's complaint. *See* Filing No. 1-1, Ex. A, Complaint at 1-2. Exhibit A is a standard template with only the consumer specific information on names and amounts changed in each case. Defendant CMS used this standard form template complaint when suing Nebraska residents in Nebraska County Courts from March of 2016 through June/July of 2016.

Kelly Bassett's alleged debts were incurred for personal, family, or household purposes, i.e., medical bills. In Dodge County Court, CMS sought and obtained an award of attorney fees and prejudgment interest under Neb. Rev. Stat. § 25-1801. CMS was represented by in-house counsel in the action. The Bassetts were not represented by counsel. County Court collection pleadings are attached as Exhibit A to Plaintiff's Complaint herein.

During the period of time at issue in this action, CMS's standard form county court complaints stated the alleged debt arose from goods, services and/or labor provided. The CMS collection complaint sets forth a monetary amount as the "the reasonable value or agreed amount of [the] services." Filing No. 1-1, Ex. A, Complaint at 1. The defendants use Neb. Rev. Stat. § 25-1801 to demand payment of attorney fees and prejudgment interest in collecting these county court cases. Defendant CMS's routine practice was not to include any account number for the alleged services in the complaints. Also, it was CMS's routine practice not to identify the person who received the services or the date the alleged services were provided. Further, the subject complaints do not state a specific date when the demand required under the statute was sent to consumers, but states only "on or before" a date ninety days prior to the filing of the complaint in County Court.

CMS used this standard form complaint in 3,800 Nebraska law suits against between 4,000 and 6,000 Nebraska residents because during the time frame at issue. In each of those cases, the defendants' cause of action or theory of recovery was *quantum meruit*. CMS no longer uses the complaint in the form of Exhibit A to file lawsuits in Nebraska.

The debts on which CMS collects are assigned to it. Only claims on the alleged past due accounts are assigned. CMS is the named plaintiff in the Dodge County Court collection case filed against the plaintiff and her decedent. The record contains assignments from both creditor healthcare providers for the Bassetts' debts to CMS. *See* Filing Nos. 54-4, and 54-6. On January 5, 2016, Fremont Area Medical Center executed an assignment as follows:

> ASSIGNMENT OF CLAIM
>
> The undersigned executes this assignment on behalf of FREMONT AREA MEDICAL CENTER, (hereinafter "Creditor").
>
> The undersigned hereby states that she/he is authorized to execute this Assignment on behalf of the creditor and does hereby, on behalf of such Creditor, for valuable consideration, assign all of the Creditor's right, title, and interest in and to the following claim, to Credit Management Services, Inc., (Assignee) and vests in the Assignee the entire legal title of said claim.
>
> 1. The goods and/or services which are the basis of the assigned claim were delivered at the request of the following person(s) or business(es), (hereinafter whether joint or single "Debtor");
>
> JAMES BASSETT
> KELLY BASSETT
>
> 2. The amount owed by the Debtor is in the amount of $1,460.30.
>
> 3. Said Charges are for: MEDICAL SERVICES &/OR SUPPLIES.

Filing No. 54-4, Second Declaration of Kenneth King ("Second King Decl."), Ex. 2A. On December 10, 2015, an assignment identical to that set out above was executed by Pender Community Hospital for a claim in the amount of $1,182.77 for medical services and supplies to the Bassetts. Filing No. 54-6, Affidavit of Tessa P. Stevens, Ex. 3A. At the bottom of each assignment is the notation "Detailed Statements are needed." *Id.*; Filing No. 54-4, Second King Decl., Ex. 2A.

CMS's in-house counsel prepare, sign and file these template complaints. CMS's in- house counsel are paid a straight salary and do not receive the statutory attorney fees that CMS collects.

7

Undisputed evidence shows CMS does not pay any portion of the attorney fees or prejudgment interest it collects pursuant to Neb. Rev. Stat. § 25-1801 to the original creditors. The money is deposited into the CMS general account and is not specifically directed to pay in-house counsel. CMS also expends substantial amounts on salaries, benefits, overhead and other expenses of its own attorneys employed in-house, as well as payments it makes to outside counsel who represent CMS from time to time in collection actions. CMS's general policy was to apply consumers' funds to post judgment costs, interest and attorney fees before the principal and before sending a payment to the original creditor for its share. As was its routine practice, CMS applied all the payments collected from Mrs. Bassett to statutory attorney fees and prejudgment interest first before paying the creditor.

The record shows defendant Jason Morledge is the President of CMS. The plaintiff alleges he created, designed, directed, and supervised the practices of CMS and its in-house attorneys in requesting an award of attorney fees pursuant to Neb. Rev. Stat. § 25-1801. Jason Morledge is CMS's only corporate officer.

**III.  LAW**

  A.  Summary Judgment—Standard of Review

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

A filing of cross-motions for summary judgment does not "necessarily indicate that there is not dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). Consequently, "where conflicting inferences as to a material

fact may reasonably be drawn from the materials before the court, the case is not appropriate for summary judgment." *Id.*

B. FDCPA/NCPA

The Fair Debt Collection Practices Act "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins,* 514 U.S. 291, 292 (1995). For example, the Act provides that a debt collector may not use violence, obscenity, or repeated annoying phone calls, may not falsely represent the character, amount, or legal status of any debt, and may not use various unfair or unconscionable means to collect or attempt to collect a consumer debt. *Id.; see Peters v. General Service Bureau, Inc.,* 277 F.3d 1051, 1054 (8th Cir. 2002). (stating that the FDCPA contains general prohibitions on "'conduct the natural consequence of which is to harass, oppress, or abuse any person' (15 U.S.C. § 1692d), the use of 'any false, deceptive, or misleading representation or means' (15 U.S.C. § 1692e), and any 'unfair or unconscionable means to collect or attempt to collect a debt' (15 U.S.C. § 1692f)." The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage. *Id.* "[T]he term 'debt collector' in the Fair Debt Collection Practices Act applies to a lawyer who 'regularly,' through litigation, tries to collect consumer debts." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (emphasis removed) (citation omitted).

In evaluating whether a debt collection letter is false, misleading, or deceptive in violation of § 1692e, the letter must be viewed through the eyes of an unsophisticated consumer. *Id.* at 1055. A misleading representation of state law is an FDCPA violation under 15 U.S.C. § 1692e. *Duffy v. Landberg*, 215 F.3d 871, 874 (8th Cir. 2000). The

10

FDCPA "applies to the litigating activities of lawyers." *Heintz,* 514 U.S. at 294. The Act "imposes some constraints on a lawyer's advocacy." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 600 (2010).

C.   Nebraska Law

Under Neb. Rev. Stat. § 25–1801, as it existed at the time of the challenged conduct, provided jurisdiction in Nebraska County Courts for claims under $4,000 for certain specified actions, including an action to recover for goods and services rendered. The statute provided that the plaintiff must first present the claim to the allegedly liable party and if the claim is not paid within 90 days, may sue for the amount of the original claim plus additional costs, interest, and attorney fees. *Id.* The statute did not address the subject of assigned claims, nor did it address fees for in-house counsel.[6] The statute had been interpreted not to permit collection of amounts in

---

[6] Specifically, the statute provides:

> Any person, partnership, limited liability company, association, or corporation in this state having a claim which amounts to four thousand dollars or less against any person, partnership, limited liability company, association, or corporation doing business in this state for (1) services rendered, (2) labor done, (3) material furnished, (4) overcharges made and collected, (5) lost or damaged personal property, (6) damage resulting from delay in transmission or transportation, (7) livestock killed or injured in transit, or (8) charges covering articles and service affecting the life and well-being of the debtor which are adjudged by the court to be necessaries of life may present the same to such person, partnership, limited liability company, association, or corporation, or to any agent thereof, for payment in any county where suit may be instituted for the collection of the same. If, at the expiration of ninety days after the presentation of such claim, the same has not been paid or satisfied, he, she, or it may institute suit thereon in the proper court. If payment is made to the plaintiff by or on behalf of the defendant after the filing of the suit but before judgment is taken, except as otherwise agreed in writing by the plaintiff, the plaintiff shall be entitled to receive the costs of suit whether by voluntary payment or judgment. If he, she, or it establishes the claim and secures judgment thereon, he, she, or it shall be entitled to recover the full amount of such judgment and all costs of suit thereon, and, in addition thereto, interest on the amount of the claim at the rate of six percent per annum from the date of presentation thereof, and, if he, she, or it has an attorney employed in the case, an amount for attorney's fees as provided in this section. If the cause is taken to an appellate court and plaintiff shall recover judgment

excess of the debt without first obtaining a judgment. *Hage v. Gen. Serv. Bureau*, 306 F. Supp. 2d 883, 888 (D. Neb. 2003).

The Nebraska Legislature recently amended Neb. Rev. Stat. § 25-1801. *See* L.B. 710, 106th Leg., 2d Sess. (Neb. 2018). The Legislature changed the statute to apply to "any lawsuit" for an amount under $4,000.00 instead of specified actions and to provide for recovery of costs, interest and attorney's fees "regardless of whether the claims are liquidated or assigned." *Id.* The statute, as amended, also states 6% interest is permissible regardless of assignment until paid in full and plaintiffs can recover attorney fees whether the attorney is in-house or not. *Id.* The interest at 6% applies to the amount of the total claim commencing thirty days after the date the claim accrues, regardless of assignment.[7] *Id.* The legislative bill is titled "Change provisions

---

thereon, the appellate court shall tax as costs in the action, to be paid to the plaintiff, an additional amount for attorney's fees in such appellate court as provided in this section, except that if the party in interest fails to recover a judgment in excess of the amount that may have been tendered by any person, partnership, limited liability company, association, or corporation liable under this section, then such party in interest shall not recover the attorney's fees provided by this section. Attorney's fees shall be assessed by the court in a reasonable amount but shall in no event be less than ten dollars when the judgment is fifty dollars or less and when the judgment is over fifty dollars up to four thousand dollars the attorney's fee shall be ten dollars plus ten percent of the judgment in excess of fifty dollars.

Neb. Rev. Stat. Ann. § 25-1801.

[7] Effective July 19, 2018, the statute will provide as follows:

(1) On *any lawsuit* of four thousand dollars or less, *regardless of whether the claims are liquidated or assigned*, the plaintiff may recover costs, interest, and attorney's fees in connection with each claim as provided in this section. If, at the expiration of ninety days after each claim accrued, the claim or claims have not been paid or satisfied, the plaintiff may file a lawsuit for payment of the claim or claims. If full payment of each claim is made to the plaintiff by or on behalf of the defendant after filing the lawsuit, but before judgment is taken, except as otherwise agreed in writing by the plaintiff, the plaintiff shall be entitled to receive the costs of the lawsuit whether by voluntary payment or judgment. If the plaintiff secures a judgment thereon, the plaintiff shall be entitled to recover:

relating to civil claims of four thousand dollars or less." 2017 NE L.B. 710 (Westlaw). The bill was captioned in the Nebraska 2018 Session Law Service as "A BILL FOR AN ACT relating to civil lawsuits; to amend section 25–1801, Reissue Revised Statutes of Nebraska; to change provisions relating to costs, interest, and attorney's fees; to define a term; to provide an exception; and to repeal the original section." 2018 Nebraska Laws L.B. 710 (second regular session of the 106th Legislature) (Westlaw). The

---

    (a) The full amount of such judgment and all costs of the lawsuit thereon;

    (b) Interest at the rate of six percent per annum. *Such interest shall apply to the amount of the total claim from beginning thirty days after the date each claim accrued, regardless of assignment, until paid in full*; and

    (c) If the plaintiff has an attorney *retained, employed, or otherwise working in connection with the case*, an amount for attorney's fees as provided in this section.

(2) If the cause is taken to an appellate court and the plaintiff recovers a judgment thereon, the appellate court shall tax as costs in the action, to be paid to the plaintiff, an additional amount for attorney's fees in such appellate court as provided in this section, except that if the plaintiff fails to recover a judgment in excess of the amount that may have been tendered by the defendant, then the plaintiff shall not recover the attorney's fees provided by this section.

(3) Attorney's fees shall be assessed by the court in a reasonable amount but shall in no event be less than ten dollars when the judgment is fifty dollars or less and when the judgment is over fifty dollars up to four thousand dollars the attorney's fee shall be ten dollars plus ten percent of the judgment in excess of fifty dollars.

(4) For purposes of this section, the date that each claim accrued means the date the services, goods, materials, labor, or money were provided, the date the charges were incurred by the debtor, the date the injury or damages occurred, or the date of the loss, unless some different time period is expressly set forth in a written agreement between the parties.

(5) *This section shall apply to original creditors as well as their assignees and successors.*

(6) This section does not apply to a cause of action alleging personal injury, regardless of the legal theory asserted.

2017 Nebraska Legislative Bill No. 710, Nebraska One Hundred Fifth Legislature - Second Regular Session, 2017 NE L.B. 710 (NS) (Neb. February 28, 2018) (emphasis added) (Westlaw).

Legislative Bill was developed by the Nebraska Collectors Association admittedly in response to federal court lawsuits.

See, https://negraskalegislature.gov/FloorDocs/105/PDF/Transcripts/Judiciary/2018-01-19.pdf.; *see also* https://negraskalegislature.gov/FloorDocs/105/PDF/Transcripts//Floor Debate/r2day21.pdf (last visited June 13, 2018).

Under Nebraska law, procedural amendments to statutes ordinarily apply to pending cases, while substantive amendments do not. *Harris v. Omaha Hous. Auth.*, 698 N.W.2d 58, 63 (Neb. 2005). In noncriminal cases, substantive statutes are generally not given retroactive effect unless the Legislature has clearly expressed an intention that the new statute is to be applied retroactively. *In re Interest of Clifford M.*, 626 N.W.2d 549, 556 (Neb. 2001); *see also Abboud v. Papio–Mo. River Natural Res. Dist.*, 571 N.W.2d 302, 306 (Neb. 1997) (legislative act operates only prospectively and not retrospectively unless legislative intent and purpose that it should operate retrospectively is clearly disclosed); *In re Interest of J.M.N.*, 464 N.W.2d 811 (Neb. 1991) (declining to give retroactive application to amended statutes because no language in the amended statutes clearly evidenced such intent on the part of the Legislature). Thus, "the critical question is whether the amendment is substantive or procedural, not whether the act or new legislation in its entirety is substantive or procedural." *In re Interest of Clifford M.*, 626 N.W.2d at 556 (substantive law creates duties, rights, and obligations, whereas procedural law prescribes means and methods through and by which substantive laws are enforced and applied).

IV. **DISCUSSION**

The court first finds that the amended statute is not applicable to this action. The statute, as amended, has no application to the collection practices challenged in this action, which predate the 2018 statute. See *Robinson v. Accelerated Receivables Sols. (A.R.S.), Inc.*, No. 8:17CV56, 2018 WL 1954249, at *1 n.2 (D. Neb. Apr. 19, 2018). The court rejects the defendants argument that the recent amendments to Neb. Rev. Stat. § 25-1801 are a mere clarification of the law as it already existed at the time of the incidents that give rise to the plaintiff's complaint. First, the legislation does not state that it is retroactive. The court finds the 2018 amendments to Neb. Rev. Stat. § 25-1801 are substantive. The amendments to the legislation work a substantive change in the law in that it expands the statute's coverage from certain specified causes of action to "any action."[8] Further, the amendments create a right to prejudgment interest dating from the date the debt was incurred, and permit prejudgment interest on unliquidated claims, substantively expanding the entitlement to both attorney fees and interest.[9] (formerly, the statute allowed interest from the date of "presentment" of the claim to the debtor and interest on written contracts was limited to liquidated claims). The changes expand the scope of the statute, creating new rights to recovery of prejudgment interest by creditors and imposing new obligations on debtors. The amendments were designed

---

[8] Notably, the statute now covers actions on contract under the jurisdictional threshold that were formerly governed by Neb. Rev. Stat. § 45-104, which provides for prejudgment interest only on liquidated claims. Evidence in the *Powers* case shows that CMS relied on that statute to obtain prejudgment interest on actions on written contracts. See *Powers*, No. 11-CV-436, Filing No. 186, Memorandum and Order at 7-8.

[9] Formerly, the statute allowed interest from the date of "presentment" of the claim to the debtor and interest on written contracts was limited to liquidated claims. See *Powers*, No. 11-CV-436, Filing No. 186, Memorandum and Order at 7-8; Neb. Rev. Stat. § 25-1801 (stating interest could be recovered "interest on the amount of the claim at the rate of six percent per annum from the date of presentation thereof").

to, and did, alter the statute.  In captioning and referring to the law, the Nebraska legislature expressly called it a "change" to the law.  Review of the Judiciary Committee's and the Nebraska Legislature's debate on the legislation shows legislators discussed the ways the amendments would change the law, despite the bill's proponents characterization of the language as merely clarifying the statute.  Accordingly, the court will apply the law and supporting authority in effect at the time the collection complaints at issue were filed.

Based on that authority, the court finds the defendants have not shown that they are entitled to a summary judgment of dismissal.  The defendant argues points rejected by this court in *Powers,* in an apparent attempt to essentially "undo" that opinion.  The means to challenge this court's holding in *Powers* would have been an appeal.  They base other arguments on authority that is not applicable to this action and on supposed community standards and practices in Nebraska County Courts that are not relevant to the FDCPA determination.[10]  The defendants have not shown they are entitled to summary judgment and their motion will be denied.

The issue in this litigation is whether the standard collection complaint that the defendants used from March 2016 to June/July of 2016 is misleading or confusing as a matter of law in violation of the FDCPA and/or the NCPA.  The gravamen of the plaintiff's complaint is that the defendant's characterization of its cause of action as one for goods and services rather than an action on an account is misleading and deceptive.

---

[10] They rely on the purported expert testimony of retired Hall County Judge Philip Martin.  The plaintiff has moved to strike that testimony and Judge Martin's purported opinions are discussed in this court's order on the plaintiff's motions for class certification and to strike, which are filed contemporaneously.

16

That issue was squarely addressed and resolved against defendant CMS in the *Powers* case.[11]  See *Powers,* No. 8:11CV436, 2016 WL 612251, at *10.  CMS did not appeal this court's finding in *Powers* and is bound by this court's decision.

Recent Nebraska District Court findings to the contrary are not binding on this court and are of no consequence with respect to these defendants.  The record shows that the standard collection complaints in the present case do not cure the infirmities noted in *Powers* and defendant CMS continued to violate the FDCPA in the complaint filed against the plaintiff in County Court and others like it.  The court finds the plaintiff is entitled to a summary judgment of liability on her claim that the CMS standard form complaint at issue violates the FDCPA in that the characterization of the cause of action is misleading, as is the defendants' failure to state the date of the services rendered or to identify the patient to whom such services were rendered.[12]

The record shows that CMS acknowledges it keeps all attorney fees and prejudgment interest it collects.  Whether that practice amounts to imposition of an undisclosed collection fee was not addressed in the *Powers* case and remains an issue for resolution in the present case.  Similarly, whether or not in-house counsel can collect

---

[11] In *Robinson*, the court stated that the court had not addressed or resolved the issue of whether "'actions on accounts'" qualify under § 25-1801 and found "the Nebraska Supreme Court's analysis suggests that 'actions on accounts' are proper under § 25-1801 if they otherwise qualify under the statute's criteria." *Robinson*, No. 8:17CV56, 2018 WL 1954249, at *3 citing *Thomas & Thomas Court Reporters, L.L.C. v. Switzer*, 810 N.W.2d 677, 686 (Neb. 2012)).  In the context of this case, however, defendant CMS was aware as of the date of the *Powers* decision, February 2, 2016, that its standard form collection complaint had been found to be misleading in that it mischaracterized the nature of the claim and could lead an unsophisticated consumer to pay an amount that was artificially inflated by virtue of requests for attorney fees and prejudgment interest.  See *Powers*, No. 8:11CV436, 2016 WL 612251, at *13.

[12] Even under the new statute, the court would find the complaint at issue misleading in failing to state when the services were rendered, which would be material to the time of accrual of prejudgment interest.

attorney fees remains an issue. Also, the court makes no determination with respect to whether defendant Jason Morledge can be held liable as a "debt collector" within the meaning of the FDCPA under the theory of personal involvement in the conduct or by piercing corporate veil. *See, e.g., Powers*, No. 8:11CV436, 2016 WL 612251, at *12 (involving individual defendants Micheal Morledge and Brady Keith).

THEREFORE, IT IS ORDERED THAT:

1. The defendants' motion for summary judgment (Filing No. 74) is denied;

2. The plaintiff's motion for partial summary judgment (Filing No. 71) is granted with respect to liability on the limited issue set forth above; and

3. The defendants' motion for oral argument (Filing No. 81) is denied.


Dated this 28th day of June, 2018.

BY THE COURT:

s/ Joseph F. Bataillon  
Senior United States District Judge