IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KELLY M. BASSETT, individually and as heir and Personal Representative of the Estate of James M. Bassett, on behalf of herself and all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>CREDIT MANAGEMENT SERVICES, INC., and JASON MORLEDGE,<br><br>Defendants. | 8:17CV69<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the plaintiff's motions to certify a class, Filing No. 49 and to exclude expert testimony under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993), Filing No. 63.[1] This is a putative class action for violations of the Fair Debt Collection Practices Act, ("FDCPA") 15 U.S.C. §1692 *et seq.,* and the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601 *et seq.* ("NCPA").

I.  BACKGROUND

On behalf of herself and others similarly situated and as personal representative of her deceased husband's estate, plaintiff Kelly M. Bassett alleges defendant CMS wrongfully and deceptively miscast its cause of action in county court cases in order to obtain attorney fees under Neb. Rev. Stat. § 25-1801, wrongfully sought and obtained fees for in-house counsel, and wrongfully collected and kept prejudgment interest and attorneys' fees as undisclosed collection fees. She alleges that CMS's conduct violated

---

[1] Also pending is defendant's motion for a hearing on the motion, Filing No. 52. The court finds the issues are straightforward and no hearing is necessary. The motion will be denied.

of 15 U.S.C. § 1692e (prohibiting false, misleading, or deceptive representations), § 1692e(2)(A) (prohibiting false representation of the character, amount, or legal status of any debt); § 1692e(2)(B) (prohibiting false representation of services rendered or compensation which may lawfully be received by any debt collector for the collection of a debt), § 1692e(5) (prohibiting a "threat to take any action that cannot legally be taken or that is not intended to be taken"), § 1692e(10) (prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"), § 1692f (prohibiting the use of "unfair or unconscionable means to collect or attempt to collect any debt."); and § 1692f(1)(prohibiting "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" and Neb. Rev. Stat. § 59-1602.

Bassett moves for certification of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) defined as follows:

(i) all persons with addresses in Nebraska;
(ii) to whom Defendants sent or served, or caused to be sent or served, a county court collection complaint in the form of Exhibit A (Filing No. 1-1);
(iii) in an attempt to collect an alleged unpaid medical account;
(iv) which requested an award of statutory attorneys' fees and/or prejudgment interest pursuant to Neb. Rev. Stat. § 25-1801.

The record shows that the time period involved is from March 4, 2016 to June/July 2016, which is the period of time that CMS filed the subject form collection complaints. In support of her motion, the plaintiff has shown that during that time defendant CMS used a standard form template complaint similar to Exhibit A when

suing Nebraska residents in Nebraska County Courts. Filing No. 51-7, Ex. 4B, Deposition of Tessa Stevens ("Stevens Dep.") at 7, 27-28, 30-31; Filing No. 51-12, Ex. 5A, Deposition of Dana Fries ("Fries Dep."), at 22-23; Filing No. 51-15, Ex. 5C, Deposition of Steven Morrison ("Morrison Dep.") at 40-41. CMS used this standard form complaint in 3,800 Nebraska law suits against between 4,000 and 6,000 Nebraska residents during that time frame. Filing No. 51-7, Ex.4B, Stevens Dep. at 29-30. In each of these cases, CMS relied on *quantum meruit* as its theory of recovery. *Id.* at 28-30.; Filing No. 51-12, Ex.5A, Fries Dep. at 22-23; Filing No. 51-13, Ex. 5B, Deposition of Megan Bischoff ("Bischoff Dep.") at 17-20, 26-28; Filing No. 51-15, Ex.5C Morrison Dep. at 37-39).

CMS relies on Neb. Rev. Stat. § 25-1801 as authority for its demand for payment of attorney fees and prejudgment interest in collecting these county court cases. Filing No. 51-7, Ex.4B, Stevens Dep. at 45-49; Filing No. 51-12, Ex.5A, Fries Dep. at 22-26; Filing No. 51-13, Ex.5B, Bischoff Dep. at 23-24; Filing No. 51-15, Ex.5C Morrison Dep.at 29, 44-45. CMS's in-house counsel sign and file the template complaints. Filing No. 51-7, Ex.4B, Stevens Dep. at 8-9, 65; Filing No. 51-6, Ex.4A, Deposition of Jason Morledge, ("Morledge Dep.") at 77-79; Filing No. 51-12, Ex.5A Fries Dep. at 22-23; Filing No. 51-13, Ex.5B, Bischoff Dep. at 4-7; Filing No. 51-15, Ex.5C, Morrison Dep. at 10-11. CMS's in-house counsel are paid a straight salary and do not receive the statutory attorney fees CMS collects. Filing No. 51-7, Ex. 4B, Stevens Dep. at 53; Filing No. 51-18, Ex. 6, Answers to Requests for Admission ("RFA") at 2-3. CMS does not pay any portion of the attorney fees or prejudgment interest collected under Neb. Rev. Stat. § 25-1801 to original creditors. Filing No. 51-2, Ex. 2, Affidavit of Kenneth King,

3

("King Aff."); Filing No. 51-18, Ex. 6, RFA at 6-7. CMS keeps the money collected for costs, fees, and interest under Neb. Rev. Stat. § 25-1801. Filing No. 51-7, Ex.4B, Stevens Dep. at 49-50. The fees and interest collected under Neb. Rev. Stat. § 25-1801 go directly into CMS's bank account. *Id.* at 50-51. CMS's general policy is to apply consumers' postjudgment payments to costs, interest, and attorney fees before sending any payment to the original creditor for its share of the principal debt. *Id.* at 52; Filing No. 51-18, Ex. 6, RFA at 2.

Fremont Medical Center (hereinafter "FMC") is one of CMS's clients. Filing No. 51-7, Ex.4B, Stevens Dep. at 52-53. Kenneth King, custodian of records and manager of patient financial services for FMC, states in his declaration that CMS provides extensive reports to FMC on a regular basis. Filing No. 51-2, Ex.2, King Decl. at 2. In addition, Fremont Medical Center produced over 1,400 pages of documentation reports and records about specific accounts from CMS. *Id.*, Ex. A. These reports include the names of the consumer, the amount collected for each, the split of the share between CMS and FMC and the total collected. *See, e.g., id.*, King Decl. at 1; Filing No. 51-3, CMS reports (representative sample with consumer names redacted). The judgment in favor of CMS and against the plaintiff was in the amount of $2,643.07 for the underlying debt, costs in the amount of $69.16, prejudgment interest in the amount of $72.99, attorney's fee of $269.30, and post-judgment interest at 2.391%.[2] Filing No. 1-1, Ex. E.

---

[2] The plaintiff does not seek to vacate any county court judgment. Her focus is on CMS's debt collection practices and the allegedly misleading and confusing language of the County Court complaint at issue. The cause of action raised in this proceeding is not the same as the cause of action in state court and the remedy sought in the litigation will not involve setting aside any state court judgment. *See, e.g., In re: FDCPA Cognate Cases*, No. 1:13CV1328, 2016 WL 1273349, at *3 (W.D. Mich. Mar. 28, 2016) (stating "in these cases, this Court is reviewing the legal significance of statements made by debt collectors and their lawyers when claiming costs in their requests for garnishment, not reviewing the underlying

In opposition to the motion, the defendants argue that the plaintiff seeks a second bite at the apple and wants to relitigate the prior state court lawsuit and "undo a prior judgment[.]" Filing No. 53, Response at 2. They argue class certification is not appropriate because individualized determinations are necessary with respect to the underlying Nebraska County Court cases. Further, they argue that the plaintiff is not a proper representative of the class.

In connection to their opposition to the plaintiff's motion for class certification, the defendants offer a purported expert opinion from retired Nebraska County Court Judge Philip Martin regarding the accepted community practices and relevant standard of care for attorneys filing pleadings such as the one at issue in this case. Judge Martin was asked "to provide comment and opinion concerning the customary standards and practices in Nebraska County Courts regarding the manner in which creditors, assignees and collection attorneys plead claims for interest and fees under Neb. Rev. Stat. § 25-1801, and the customary standards applied by County Judges in ruling on such claims." Filing No. 54-2, Expert Report of Hon. Philip Martin at 3.

---

judgments of the state courts or the validity of the garnishment process employed by the state courts."); *see Todd v. Weltman, Weinberg & Reis Co., L.P.A.,* 434 F.3d 432, 437 (6th Cir. 2006) (noting that the plaintiff therein did "not complain of injuries caused by [the] state court judgment," but by the alleged violation of Federal law). Collection claims and FDCPA claims do not arise out of the same set of operative facts. *See, e.g., Whitaker v. Ameritech Corp.,* 129 F.3d 952, 958 (7th Cir. 1997); *Peterson v. United Accounts, Inc.,* 638 F.2d 1134, 1137 (8th Cir. 1981) ("[a]lthough there is some overlap of issues raised in both cases as a result of the defenses raised in the state action, the suit on the debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts."); *see Powers v. Credit Mgmt. Servs., Inc.,* 776 F.3d 567, 572 n.3 (8th Cir. 2015) (noting relevance of state court actions for issue preclusion purposes and finding CMS not liable to any class member who unsuccessfully litigated the issue in state court).

Judge Martin concludes that "the pleadings at issue in the underlying Bassett case are readily understandable to [him] to as a recently retired Hall County Judge," and in [his] opinion, the complaints at issue are "(if anything) more detailed and technically precise than most such pleadings I have reviewed in collection cases venued in Hall County over my 25 years on the bench" and further that "it does not appear to [him] that those pleadings were inconsistent with the facts, or with the standards as commonly applied in Hall County over the last 25 years." *Id.* at 7. He also states "it was well known in Hall County throughout the years in which I served as a Judicial Officer that Credit Management Services, Inc. appeared in County Courts through in-house lawyers employed by the company," and that he and other county court judges awarded attorneys' fees to in-house counsel in the belief the awards were consistent with Nebraska law and community standards. *Id.* at 8-9.

The plaintiff moves to exclude Judge Martin's report, contending that Martin's testimony is not relevant to any issue, nothing in his conclusions is helpful to the court, and he is not qualified to testify to issues involving the FDCPA. She argues that the testimony includes legal conclusions and opinions on matters on which Judge Martin is not qualified as an expert.

II.   LAW

   A.   Expert testimony

Federal Rule of Evidence 702 allows for the admission of expert opinions. Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

6

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993) (holding that when faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable). *Daubert* applies to all expert testimony, not only scientific expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). In light of *Daubert* and *Kumho Tire*, this court must screen proffered expert testimony for relevance and reliability. *See Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 896 (8th Cir. 2008).

The expert's information or opinion must "assist" the trier of fact in understanding or determining a fact in issue. Fed. R. Evid. 702(a). "This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591. A reliable opinion must be based on scientific methodology rather than on subjective belief or unsupported speculation. *See Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000).

In assessing reliability, the court should consider factors including whether the proposed expert's theory, methodology or technique: 1) can be and has been tested; 2) has been subjected to peer review; 3) has a known or potential rate of error; and 4) is generally accepted by the relevant community. *Bland*, 538 F.3d at 896. This list of factors is not exclusive, and this court is allowed "great flexibility" in its analysis.

7

*Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1082 (8th Cir. 1999). Doubts regarding expert testimony should generally be resolved in favor of admissibility. *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011).

"Resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *United States v. Brodie*, 858 F.2d 492, 497 (9th Cir. 1988). *See also Burkhart v. Wash. Metro. Area Trans. Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards"); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99–100 (1st Cir. 1997) ("At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony [as to principles of law], and we now join them as to the general rule."); *In re Initial Pub. Offering Sec. Litig.*, 174 F.Supp.2d 61, 64 (S.D.N.Y. 2001) ("[E]very circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.").

B.  Class Certification

Under the Federal Rules of Civil Procedure, "one or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); see *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). In order for a class to be certified, all four requirements of Rule 23(a) must be satisfied along with one of the three categories of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 614 (1997); *Blades v. Monsanto Co.*, 400 F.3d 562, 568-69 (8th Cir. 2005). "Federal Rule of Civil Procedure 23(b)(3) requires that, before a class is certified under that subsection, a district court must find that 'questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting Fed. R. Civ. P. 23(a)).

Class ascertainability is "an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593. "Class ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)." *Carrera*, 727 F.3d at 306. The method of determining whether someone is in the class must be "administratively feasible," meaning that "identifying class members is a manageable process that does not require much, if any, individual factual inquiry." *Id.* at 307-08.

A number of factors are relevant to the numerosity requirement of Rule 23(a), "the most obvious of which is, of course, the number of persons in the proposed class." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982); *compare Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 609 (8th Cir. 1983) (noting that seven to fourteen class members is not enough) *with Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1323 (8th Cir. 1991) (finding 1,685 potential plaintiffs a sufficiently large number). In addition to the size of the class, the court may also consider the nature of the action, the size of

9

the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Paxton*, 688 F.2d at 559-60; *Tate*, 723 F.2d at 609 (it is appropriate for the district court to consider "that trying the individual suits would not be inconvenient because it could examine the factual basis of" each class member's complaint).

"Commonality requires a showing that class members 'have suffered the same injury.'" *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 571 (8th Cir. 2015) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982). "Rule 23(a)(2) requires plaintiffs to show there are questions of law or fact common to the four classes. *Powers,* 776 F.3d at 571. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. *Dukes*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation omitted; emphasis in original). Commonality is not required on every question raised in a class action. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *see Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (stating that if the common, aggregation-enabling, issues in the case are more prevalent or important than individual issues, the action is appropriate for class-action treatment "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members").

Rule 23(a) requires a named plaintiff to have claims or defenses which "are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). Typicality under Rule 23(a)(3) means "that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977). A class representative has the burden to show typicality of his claims in relation to the other putative members of the class. *Amchem*, 521 U.S. at 613. The burden is fairly easily met so long as other class members have claims similar to the named plaintiff. *Alpern* 84 F.3d at 1540 (noting that factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory).

The adequacy of representation requirement of Rule 23(a)(4) is of critical importance in every class action. *Hervey v. City of Little Rock*, 787 F.2d 1223, 1230 (8th Cir. 1986). The "adequacy of representation" inquiry reflects concerns about whether the class representatives have common interests with the members of the class and whether they and their counsel will competently and vigorously pursue the lawsuit. *Id.*; *Paxton*, 688 F.2d at 562-63.

Under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation." *Bouaphakeo*, 136 S. Ct. at 1045 (quoting *Amchem*, 521 U.S. at 623). "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Id.* An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* Where risks, small recovery, and relatively high costs of litigation make it unlikely that plaintiffs would individually pursue their claims, a class proponent has demonstrated that a class action is superior to other methods of adjudicating the controversy. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (stating "[t]hese considerations are at the heart of why the Federal Rules of Civil Procedure allow class actions in cases where Rule 23's requirements are satisfied.").

    C.    Expert testimony

Federal Rule of Evidence 702 allows for the admission of expert opinions. Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>   (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>   (b)  the testimony is based on sufficient facts or data;
>   (c)  the testimony is the product of reliable principles and methods; and
>   (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; see *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993) (holding that when faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable). *Daubert* applies to all expert testimony, not only scientific expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

In light of *Daubert* and *Kumho Tire*, this court must screen proffered expert testimony for relevance and reliability. See *Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 896 (8th Cir. 2008). A reliable opinion must be based on scientific methodology rather than on subjective belief or unsupported speculation. See *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000). In assessing reliability, the court should consider factors including whether the proposed expert's theory, methodology or technique: 1) can be and has been tested; 2) has been subjected to peer review; 3) has a known or potential rate of error; and 4) is generally accepted by the relevant community. *Bland*, 538 F.3d at 896. This list of factors is not exclusive, and this court is allowed "great flexibility" in its analysis. *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1082 (8th Cir. 1999). Doubts regarding expert testimony should generally be resolved in favor of admissibility. *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011). The expert's information or opinion must also "assist" the trier of fact in understanding or determining a fact in issue. Fed. R. Evid. 702(a). "This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591.

"[R]esolving doubtful questions of law is the distinct and exclusive province of the trial judge." *United States v. Brodie*, 858 F.2d 492, 497 (9th Cir. 1988). See also *Burkhart v. Washington Metro. Area Trans. Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997)

13

("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards"); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99–100 (1st Cir. 1997) ("At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony [as to principles of law], and we now join them as to the general rule."); *In re Initial Pub. Offering Sec. Litig.*, 174 F.Supp. 2d 61, 64 (S.D.N.Y. 2001) ("[E]very circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.").

The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony. *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). "That interest is not implicated at the class certification stage where the judge is the decision maker." *Id.* The district court's "gatekeeping function" under *Daubert* ensures that expert evidence "*submitted to the jury*" is sufficiently relevant and reliable, but "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself[.]" *Id.* (quoting *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005)). Similar reasons support less stringent application of *Daubert* in bench trials. *Id.* The "usual concerns of the [Daubert] rule— keeping unreliable expert testimony from the jury—are not present in such a setting." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010); *see also* 29 Charles Alan Wright & Victor James Gold, Fed. Prac. & Proc. § 6266, n. 90.2 (2010).

III. DISCUSSION

    A. Motion to Strike Expert Report

Because the court will be the trier of fact on the issue of class certification, it is unnecessary for the court to exercise a strict pretrial gate-keeping function under

*Daubert*.  The court is skeptical that the Judge Martin's opinions will help the court understand the evidence or determine a fact in issue.  Even under the less-stringent standards applicable to a bench trial, the proponent of the testimony has not shown the report and opinions are relevant to issues in the lawsuit.

Essentially, Judge Martin's report addresses the way county courts regarded or handled collection complaints filed under Neb. Rev. Stat. § 25-1801.  That has nothing to do with the issue before the court—whether the complaints were misleading under FDCPA standards.  Whether the relief sought or granted was justified under Nebraska law is not the same issue as whether a complaint violates the FDCPA.  His opinions that the complaint was more detailed and technically precise than many he had seen, notably different than those presented in the *Powers* case and was readily understandable to him as a recently retired Hall County judge is not probative of whether an unsophisticated consumer would understand the document.

Moreover, his statement that, in his opinion, "it is not feasible for litigants and their counsel to confine themselves to filing in the County Courts pleadings that avoid any legal contentions not readily understood by the least sophisticated pro se party" contravenes the standard to be applied in this case.  The FDCPA requires debt collectors to communicate with debtors in a manner that an unsophisticated consumer could understand.

To the extent that the defendants argue that challenges to the testimony go to weight rather than admissibility, the court has reviewed the testimony and affords it little, if any weight.  Though the report may provide context in general, it does not aid the

determination of any question at issue. Also, the opinions, to the extent arguably relevant, address issues of law within the province of the court.

The court finds the witness' testimony credible for the limited information conveyed noting there was no review of applicable federal statutes or case law. For the purposes of class certification only, the court will overrule the motion to strike testimony and receive it for its limited relevance as noted above. Accordingly, the court finds the plaintiff's motion to strike should be denied.

   B.  Motion for Class Certification

The court finds that the plaintiff has satisfied her burden of showing numerosity, commonality, typicality and adequacy of representation. She has also shown the class can be ascertained by a review of CMS records and court records for a relatively short period of time. The defendants admit they sent complaints in the form of Ex. A to approximately 3,800 Nebraska households. The task of reviewing that number of claims is administratively feasible. Review of claims that number in the low thousands is not a magnitude that is overly burdensome in light of the fact that the information is digitized. After consideration of the number of persons in the proposed class, the nature of the action, the inconvenience of trying individual suits, and other factors relevant to the practicality of joining all the putative class members, the court finds Bassett satisfies the numerosity requirement for the class. The potential class consists of between 4,000 and 6,000 people.

The court concludes the core of the plaintiff's suit is based on common facts and law. In this matter, common issues link the prospective class members and are related to the case's resolution. A common legal issue in the matter has already been resolved

on summary judgment. Contrary to the defendants' assertion, resolution of the remaining issues will not require in-depth individualized inquiry. The information can be gleaned from CMS's records and court records. Accordingly, Bassett satisfies the element of commonality. The fact that individuals may have different amounts of damages is of little consequence to the commonality of the class.

The court also finds Bassett's claim is typical of the claims of the class. The same form complaint was filed against each class member and they were all subjected to the same FDCPA violations. The court has determined on summary judgment that CMS has violated the FDCPA and NCPA in miscasting its complaint and obtaining attorney fees. The other alleged FDPCA/NCPA violations—that in-house counsel may not collect attorney fees under Neb. Rev. Stat. § 25-1801 and that CMS keeping the attorney fees and interest are undisclosed collection fees—are also common to the class. The court rejects the defendants' argument that the plaintiff seeks relief that is atypical. As the plaintiff has defined the claims, her interests are aligned with the interests of the class.

Bassett has shown she will vigorously prosecute the interests of the class through qualified counsel. There is no evidence of a conflict between Bassett's claims and those of the putative class members. The plaintiff has demonstrated a sufficient understanding of the case, her responsibilities to the class, and the expectations as a class representative. Therefore, counsel should be appointed pursuant to Rule 23(g).

The court is familiar with plaintiff's counsel and finds them qualified to prosecute the lawsuit. Counsel is experienced in class action lawsuits and consumer protection litigation and has been approved as class counsel in numerous cases. Thus, the court

17

finds the plaintiff and her counsel, O. Randolph Bragg of the law firm of Horwitz, Horwitz and Pamela Car and William Reinbrecht of the Car Reinbrecht Law Firm will fairly and adequately protect the interests of the class, meeting the adequacy of representation element under Rule 23(a)(4).

The court further finds that the questions of law and the facts common to class members on liability predominate over any questions that affect individual members, which relate primarily to the amount of damages. The court finds it is unlikely that the class members would pursue their claims individually due to the resources required to litigate an action of this nature and the small amounts of recovery. Due to the number of plaintiffs and the nature of the claims, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The court finds resolution of the claims through a class action is an efficient allocation of judicial resources. Accordingly, the court finds that the plaintiff's motion for certification of class should be granted.

IT IS ORDERED:

1. The plaintiff's Motion for Class Certification (Filing No. 49) is granted.

2. This action is certified as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of the following class:

    (i) all persons with addresses in Nebraska;
    (ii) to whom defendant CMS sent or served, or caused to be sent or served, between March 1, 2016, and July 31, 2016, a county court collection complaint in the form of Exhibit A (Filing No. 1-1) and;

  (iii) in an attempt to collect an alleged unpaid medical account;
  (iv) that requested an award of statutory attorneys' fees and/or prejudgment interest pursuant to Neb. Rev. Stat. § 25-1801.

3.  The law firms of Horwitz, Horwitz and Car and Reinbrecht are appointed class counsel.

4.  The plaintiff's motion to exclude expert testimony (Filing No. 63) is denied consistent with this order.

5.  The defendants' motion for a hearing (Filing No. 52) is denied.

Dated this 28th day of June, 2018.

        BY THE COURT:

        s/ Joseph F. Bataillon
        Senior United States District Judge